IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–01112–MDB

B.B.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**ORDER**

---

Plaintiff B.B. ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Frank Bisignano ("Commissioner"), denying her application for Disability Insurance Benefits. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff replied. (["Opening Brief"], Doc. No. 14; ["Response"], Doc. No. 15; ["Reply"], Doc. No. 16.) The Commissioner has also filed the Administrative Record. (["AR"], Doc. No. 11.) After carefully analyzing the briefs, the Administrative Record, and relevant law, the Court respectfully **REVERSES** the Commissioner's final decision, and **REMANDS** for further proceedings consistent with this Order.

**BACKGROUND**

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff B.B. is identified by initials only.

Plaintiff was born on April 26, 1978; he was 44 years old on his alleged disability onset date of January 13, 2023. (AR 97, 220, 275-76.) Plaintiff filed an initial claim of disability on March 23, 2023, alleging impairments of sleep apnea, hypertension, nerve compression, herniated discs, osteoarthritis, degenerative disc disease, major depression, and anxiety. (AR 97.) The Commissioner denied Plaintiff's claim on December 4, 2023, and denied reconsideration on May 26, 2024. (AR 134, 146.)

In the November 28, 2023 Disability Determination Explanation ("DDE-Init"), Nancy Simpkins, the state-agency reviewing physician, reported a residual functional capacity ("RFC")[2] to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of two hours, and sit for a total of about six hours in an eight-hour workday. (AR 103.)[3] In determining the RFC, Dr. Simpkins opined that:

> "[t]he medical evidence indicates claimant has early 2022 C5-6 and C6-7 cervical disc arthroplasty (1/13/23 AOD) with good results. He also underwent L4-5 posterior spinal fusion in 5/2023 with good results; last post-op visit in 9/2023 revealed intact gait, claimant was happy with results. Final issue appears to be his left hip, though claimant has shown reluctance to undergo additional surgery, and

[2] The RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] Dr. Simpkins did not express an opinion in terms of an overall exertional category (e.g., "light" or "sedentary" work); rather, she articulated a function-by-function assessment of Plaintiff's specific physical capacities. (AR 103.) Notably, Dr. Simpkins' function-by-function findings do not correspond neatly to either with the 20/10-pound lift/carry finding, or 6-hour sitting capacity, which are consistent with light work, or the 2-hour standing/walking limitation, which is markedly more restrictive than the "good deal of walking or standing" required for light work. *See* 20 C.F.R. § 404.1567(a)–(b); SSR 83-10, 1983 WL 31251, at *5–6 (defining sedentary work as involving sitting for approximately 6 hours and standing/walking no more than about 2 hours in an 8-hour workday, and light work as requiring "a good deal of walking or standing," approximated at 6 hours). Instead, Dr. Simpkins' opinion reflects elements of both exertional categories rather than a single, internally consistent exertional-level conclusion.

he continues w/ intact gait and full strength."

(AR 103.)[4]

Then, on May 2, 2024, at the reconsideration stage and in the Disability Determination Explanation ("DDE-Recon"), Jeffrey Holtgrewe, the state-agency reviewing physician, assessed Plaintiff's RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of six hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. (AR 114.)

A hearing was held before the administrative law judge ("ALJ") on November 21, 2024. (AR 48-96.) A few days later, on November 27, 2024, the ALJ issued the Unfavorable Decision, finding Plaintiff not disabled. (AR 15-33.) At the first step of the five-step sequence for making determinations,[5] the ALJ found Plaintiff did not participate in gainful employment during the

[4] Plaintiff's characterization of Dr. Simpkins' findings as a "sedentary work" opinion misquotes the record by drawing on a different portion of the DDE-Init, authored by the disability examiner ("DE"). (Doc. 14 at 3 *citing* AR 101, 104.) Dr. Simpkin's function-by-function assessment concludes with the statement, "[t]hese findings complete the medical portion of the disability determination," after which the document proceeds to a separate section titled "Assessment of Vocational Factors." (AR 103.) Then, the DE integrated Dr. Simpkins' functional findings into the vocational analysis and applied the vocational rules to reach a sedentary-work determination. (AR 104.) Plaintiff does not challenge the ALJ's treatment of the DE's report or its vocational conclusion; the challenge is directed solely at the ALJ's characterization of Dr. Simpkins' medical opinion. (Doc. 14 at 7-10.) Therefore, the Court will address Plaintiff's arguments as they relate to the ALJ's treatment of Dr. Simpkins' written findings, as supported by the record, rather than the vocational conclusion of the DE.

[5] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof

relevant period. (AR 20.) At step two, the ALJ found Plaintiff has severe impairments, degenerative disc disease of lumbar spine status post fusion, degenerative disc disease of cervical spine status post disc arthroplasty, degenerative joint disease of left hip status post total hip replacement, history of left shoulder replacement, depression, attention-deficit hyperactivity disorder (ADHD), anxiety, and intermittent explosive disorder. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21-23.)

Thereafter, the ALJ assessed Plaintiff's RFC. In his decision, the ALJ found that the plaintiff had the

> RFC to perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; *stand and/or walk for a total of about 4 hours in an 8-hour workday*; sit for a total of about 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance as part of job requirements; occasionally stoop, crouch, kneel, and crawl; occasionally reach overhead with the left upper extremity; tolerate occasional exposure to extreme cold and excessive vibration; never work around unprotected heights or moving and/or dangerous machinery; *perform simple tasks; and tolerate frequent interaction with the public and coworkers*.

(AR 23) (emphasis added).

In determining physical RFC, the ALJ provided an in-depth discussion of Plaintiff's objective medical records. (AR 24-28.) In evaluating the persuasiveness of the state agency medical consultants' opinions, the ALJ reiterated Drs. Simpkins and Holtgrewe's respective function-by-function findings, including their identical lift/carry, sitting, and postural limitations,

---

through step four; the Social Security Administration has the burden of proof at step five. *Lax* v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

and their divergent standing/walking findings — Dr. Simpkins opining 2 hours and Dr. Holtgrewe opining 6 hours in an 8-hour workday. (AR 28.) The ALJ agreed with certain of these findings but ultimately found the opinions "not persuasive" as a whole, explaining that, apart from Dr. Simpkins' standing/walking finding, the opinions did not adequately account for the claimant's limitations and they understated the restrictions supported by the complete record, including evidence received after the initial and reconsideration determinations. (AR 28-29.) The ALJ then emphasized Dr. Simpkins' 2-hour standing/walking finding specifically, explaining that this limitation was too restrictive, and that the objective medical evidence discussed elsewhere in the decision supported a 4-hour standing/walking limitation instead. (AR 29.)

In determining mental RFC, the ALJ considered the Psychological Consultative Evaluation dated April 2, 2024 ("Psych Evaluation") produced by Brad Marten, PsyD. (AR 30 *citing* 1099-105.) The ALJ noted that in the Psych Evaluation, Dr. Marten opined that Plaintiff:

> has mild to moderate limitations in his ability to adequately comprehend, recall, and carry out complex, multistep instructions in workplace settings, contrasted with average to mild difficulty in his ability to understand, remember, and carry out simpler, 1-2 step instructions in such settings.

(AR 30.)

Ultimately, the ALJ found Dr. Marten's opinion to be "partially persuasive" because it was supported by accepted methodology and consistent with the record. (*Id.*) But even accounting for Dr. Marten's opinion, the ALJ rejected Dr. Marten's limitation of "special supervision" because he found "no objective medical evidence supporting a need." (*Id.*)

At step four the ALJ determined that Plaintiff was unable to perform any past relevant work, and at step five, the ALJ concluded that Plaintiff retained the ability to perform other work that existed in the national economy and, therefore, is not disabled. (AR 31-32.)

The Appeals Council denied Plaintiff's request for review on February 11, 2025. (AR 1-7, 18-33.) This timely request for judicial review pursuant to 42 U.S.C. § 405(g) followed, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 1, 10.)

**STANDARD OF REVIEW**

In social security disability cases, a court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## DISCUSSION

Plaintiff lodges two challenges to the ALJ's decision. (Doc. 14 at 1.) First, he argues the ALJ set aside Dr. Simpkins' medical opinion and improperly inserted his own judgment on matters reserved for medical professionals. (Doc. 14 at 7-10.) Second, he argues the ALJ found certain limitations in Dr. Marten's opinion persuasive, but nevertheless omitted them from the RFC and failed to provide any explanation for the omission. (Doc 14 at 11-12.)

### I. Dr. Simpkins' Medical Opinion

Plaintiff takes issue with the ALJ's conclusion that Plaintiff can walk/stand for four hours, saying the conclusion was contrary to Dr. Simpkins' medical opinion and only vaguely supported by unspecified evidence. (Doc. 14 at 10.) This, Plaintiff says, amounts to an improper substitution of the ALJ's lay opinion for that of medical experts. Plaintiff says the ALJ also failed to provide an adequate basis for his finding of light work and failed to explain why Dr. Simpkins' opinion was not persuasive. (*Id.* at 9.) Plaintiff also argues the ALJ mischaracterized Dr. Simpkins' medical opinion when he said "the claimant is limited to reduced *light* work," even though Dr. Simpkins concluded Plaintiff was limited to *sedentary* work. (*Id.* at 9-10 *citing* AR 28, 104 (emphasis added).)

*The ALJ did not substitute his own lay opinion for that of a medical professional in determining Plaintiff's RFC.*

An "ALJ is charged with carefully considering all the relevant evidence and linking [his] findings to specific evidence." *Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir.2000). Accordingly, an ALJ may rely on objective medical evidence to determine a claimant's RFC, even where that evidence postdates the only medical opinions of record and the resulting RFC differs from that

opinion,[6] because the RFC determination is reserved to the ALJ rather than to any medical source. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (holding that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record"); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding that no regulation requires "a direct correspondence between an RFC finding and a specific medical opinion").

In synthesizing medical evidence, an ALJ may rely on medical findings that are not incorporated into a formal medical opinion, so long as some medical source has already interpreted the findings. This is because an ALJ may not personally interpret or diagnose truly raw, uninterpreted diagnostic material. *See Anthony G. v. Kijakazi*, No. 2:21-cv-00506, 2022 WL 10052652, at *3 (D. Utah Oct. 17, 2022) (unpublished) (explaining that an ALJ "must be able to look at the *interpretations* of a plaintiff's raw medical data and determine limitations for a plaintiff's RFC even if no medical professional offered any opinion" on those limitations). In other words, an ALJ may not substitute his own lay opinion for that of a medical professional. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993); *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (holding that "an ALJ is not free to substitute his own medical opinion for that of a claimant's treating doctors"). Finally, where the ALJ's RFC

---

[6] The Tenth Circuit has held that a medical opinion that predates the objective evidence is not unusable, and an ALJ's reliance on later evidence that was not part of an opinion, is not error where that evidence does not reflect a material change in the claimant's condition. *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (unpublished) (affirming reliance on an opinion where the later record showed no "material change" that would render the opinion "stale"). Where the later evidence does reflect a material change, however, and no medical opinion has addressed it, the ALJ should be cautious in relying solely on their own assessment of that evidence to reach specific, quantified functional limitations, and is encouraged to obtain updated medical input. *Chapo*, 682 F.3d at 1292–93 (encouraging the ALJ to obtain an updated opinion where a prior opinion could not account for material objective changes in the record).

finding conflicts with an existing medical opinion, the ALJ must explain why that opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Here, the ALJ did not substitute his lay opinion for that of a medical professional because the four-hour walk/stand limitation was based on specific, identified medical evidence rather than the ALJ's own interpretation of raw data. In the decision, the ALJ thoroughly discussed the medical evidence in the record, which demonstrated that while "claimant experiences intermittent to chronic pain from his musculoskeletal conditions … his pain and physical limitations have been reduced with surgery and physical therapy." (AR 27.) The ALJ also discussed medical records that assessed Plaintiff's degenerative disc disease of the lumbar spine (AR 26), degenerative joint disease of the left hip (AR 26-27), and left shoulder replacement (AR 27). Thus, rather than relying on vague, unspecified evidence or forming his own lay opinion from raw medical data, the ALJ grounded the four-hour walk/stand limitation in the specific findings of Plaintiff's providers. (AR 26-27.)

*The ALJ provided an adequate basis for rejecting Dr. Simpkins' medical opinion.*

An ALJ is charged with evaluating the persuasiveness of medical opinions using five factors, of which supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (providing that the Commissioner "will not defer or give any specific evidentiary weight... to any medical opinion(s)" and identifying supportability and

consistency as "the most important factors").[7] Supportability measures the extent to which a medical source's own objective findings and explanations support the source's opinion, while consistency measures the extent to which the opinion aligns with evidence from other medical and nonmedical sources in the record. 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). An ALJ must articulate, source by source, how persuasive he finds each medical opinion and must specifically explain how he considered the supportability and consistency factors, though he is not required to explain his consideration of the remaining three factors absent equally well-supported and consistent, but conflicting, opinions on the same issue. 20 C.F.R. §§ 404.1520c(b)(1)–(3), 416.920c(b)(1)–(3) (requiring the ALJ to "explain how [he] considered the supportability and consistency factors").

Here, the ALJ explained why he found Dr. Simpkins' opinions not persuasive: "[t]hey are supported by a review of the medical evidence, but that evidence, and the additional material evidence in the record since the determinations, support more restrictive limitations." (AR 29.) In other words, the ALJ found that Dr. Simpkins' opinion did not align with evidence from other medical and nonmedical sources in the record. Thereafter, the ALJ referenced various medical records he considered inconsistent with Dr. Simpkins' findings. (AR 29.)

[7] For claims filed on or after March 27, 2017, the Social Security Administration abandoned the "treating physician rule" and its accompanying deference hierarchy, under which a well-supported, uncontradicted treating-source opinion could be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (former rule, applicable to claims filed before March 27, 2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404, 416). Under the current regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," regardless of source, and instead evaluates each opinion's persuasiveness using the supportability and consistency framework set out at 20 C.F.R. §§ 404.1520c, 416.920c.

In other words, when reading the ALJ's decision as a whole, it is evident that the ALJ concluded Dr. Simpkins' opinion was inconsistent with the record. (*See* Doc. 15 at 13.) Moreover, the Court rejects Plaintiff's contention that the ALJ must specifically explain his rejection of Dr. Simpkins' walk/stand limitation of two hours. (Doc. 14 at 9.) Plaintiff offers no authority for the proposition that an ALJ must denounce every specific finding by a medical expert.

*The ALJ did not materially mischaracterize Dr. Simpkins' opinion.*

Where an ALJ inaccurately states the substance of a medical opinion and that mischaracterization forms part of the ALJ's stated basis for rejecting the opinion, reversal is warranted absent a showing that the error was harmless. *See Wade v. Astrue*, 268 F. App'x 704, 705-06, (10th Cir. 2008) (unpublished) (remanding for reevaluation where the ALJ "mischaracterized" claimant's testimony in support of a credibility finding); *cf. Talbot v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987) (mischaracterization of the nature of claimant's reported activities). Tenth Circuit decisions applying this standard have required claimants to identify a statement in the ALJ's decision purporting to describe the evidence, and demonstrate a conflict between that statement and the underlying record. *See, e.g.*, *Wade* 268 F. App'x at 706 (identifying, with citation to the hearing transcript, the specific testimony the ALJ's summary omitted or altered); *Talbot*, 814 F.2d at 1464 (mischaracterization found where the ALJ did not dispute the claimant's reported activities but distorted their nature).

By contrast, a claimant's disagreement with the ALJ's interpretation of accurately-quoted or accurately-summarized evidence does not constitute mischaracterization. In other words, where the ALJ correctly states what the evidence says but reaches a conclusion about its

significance that the claimant disputes, the claim is properly analyzed as a substantial-evidence challenge. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012) (rejecting a mischaracterization argument where claimant "fails to show that any discounting of these problems based on the mostly negative x-rays represented a mischaracterization or misuse of the medical evidence"); *cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (treating an ALJ's error as potentially harmless when it concerns evidence the ALJ "did at least consider (just not properly)," as opposed to evidence the ALJ never addressed). Likewise, selective emphasis or brevity that does not alter the substance is not a mischaracterization so long as the ALJ's reasoning can otherwise be followed and correct legal standards applied, since "merely technical omissions in the ALJ's reasoning do not dictate reversal" and courts "cannot insist on technical perfection." *Id.* at 1166.

Here, the ALJ's discussion of Dr. Simpkins' opinion accurately recited the specific function-by-function findings contained in the medical opinion. (AR 28.) And while Plaintiff claims that Dr. Simpkins "assessed Plaintiff as capable of 'sedentary' work, at a 'maximum,'" (Doc. 14 at 9 *citing* AR 104), Dr. Simpkins never reached an overall exertional-category conclusion in the Medical Evaluation. (AR 100-03). Instead, Dr. Simpkins assessed Plaintiff's discrete functional limitations: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 2 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (AR 103.) Plaintiff appears to be confused on this point because the "sedentary work" language Plaintiff quotes, is from the Vocational Assessment portion of the DDE-Init, not from Dr. Simpkins'

medical assessment. (AR 104; *see* Doc. 14 at 9.) Therefore, although the disability examiner drew on Dr. Simpkins' functional findings, the overall exertional conclusion of "sedentary work" cannot be attributed to Dr. Simpkins.[8]

Moreover, even if the ALJ's agreement with "reduced light work" were treated as a misstatement of Dr. Simpkin's opinion, the error would not be material under *Allen* and *Keyes-Zachary*, because it did not form the basis for the ALJ's finding that the opinion was not persuasive. The ALJ did not reject Dr. Simpkins' functional findings by measuring them against an assumed light-work baseline. Rather, the ALJ explained that, apart from the standing/walking limitation, Dr. Simpkins' findings "understate[d] the claimant's limitations in a manner inconsistent with the medical evidence." (AR 29.)

## II. Dr. Marten's Opinion

Plaintiff contends that the ALJ selected favorable portions of Dr. Marten's evaluation—crediting the opinion as "partially persuasive"—while omitting, without explanation, Dr. Marten's limitations on Plaintiff's ability to carry out one-to-two step instructions, concentrate with efficiency, and handle stress. (Doc. 14 at 11-12.)

---

[8] Plaintiff similarly confuses Dr. Simpkins' final signature to mean that she adopted the disability examiner's findings. (Doc 16. at 6.) Dr. Simpkins signed on the line labeled "Adult Overall Medical Disposition Signature, MC/PC," while the disability examiner separately signed on the line labeled "Disability Examiner Signature." (*Id.*) By its own label, Dr. Simpkins' signature attests to the medical disposition of the case. It does not adopt the vocational assessment. This is consistent with the agency's description of the team's roles: the medical consultant's signature "completes the medical portion of the disability determination," POMS DI 24501.001(B)(4), while the disability examiner is responsible for evaluating "the vocational aspects of the case," including what a claimant can do given the RFC at steps four and five, POMS DI 24501.001(B)(1)(c); *see also* 20 C.F.R. §§ 404.1615–.1616, 416.1015–.1016.

An ALJ must articulate how persuasive each medical opinion is and, where the RFC conflicts with a credited opinion, must explain why the conflicting limitation was not adopted. 20 C.F.R. §§ 404.1520c(b), 416.920c(b); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). An ALJ may not accept part of an opinion while discounting the remainder "with no explanation at all as to why one part... was creditable and the rest was not." *Chapo*, 682 F.3d at 1291–92. This explanation must appear in the ALJ's own decision; a reviewing court cannot supply reasons the ALJ did not articulate. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that the ALJ's unexplained step-three finding was a "bare conclusion" that "is beyond meaningful judicial review"); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (finding reversible error where an ALJ accepted some moderate limitations from a mental RFC form while rejecting others "without discussion"). A sufficient explanation requires specific, legitimate reasons grounded in the record, rather than a single conclusory factor. *Chapo*, 682 F.3d at 1291, 1293.

Here, the ALJ impermissibly adopted favorable portions of Dr. Marten's opinion while omitting, without explanation, the limitations on Plaintiff's ability to carry out one-to-two step instructions, concentrate with efficiency, and handle stress. The ALJ found Dr. Marten's opinion "partially persuasive" because it was "supported by a review of the longitudinal medical evidence, a mental status examination, and cogent explanations" and "generally consistent with the medical evidence." (AR 26, 28.) The ALJ also "accounted for [Dr. Marten's findings] in the … residual functional capacity assessment by limiting the claimant to performing simple tasks." (AR 29.) However, the ALJ did not address the remaining limitations on carrying out one-to-two

step instructions, concentrating with efficiency, or handling stress. Furthermore, though the ALJ addressed the "simple work" restriction, he did not explain how "simple work" incorporates Dr. Marten's specific findings on instruction-following, concentration efficiency, or stress tolerance, and the Commissioner's post hoc argument cannot substitute for that missing explanation.[9] *See Haga*, 482 F.3d at 1207–08. Because the ALJ credited Dr. Marten's opinion as partially persuasive but failed to explain the omission of three specific limitations, the decision does not permit meaningful judicial review of the ALJ's rationale. *See Clifton*, 79 F.3d at 1009; *Frantz*, 509 F.3d at 1302–03. Remand is, therefore, warranted for the ALJ to incorporate these limitations, provide the required explanation for their omission, or revise his conclusion.

## CONCLUSION

For the foregoing reasons the court **REVERSES and REMANDS** the Commissioner's decision. Judgment shall enter accordingly and this case shall be **closed**.

Dated this 30th day of September, 2026.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge

[9] To this point, the Commissioner argues that the restriction to "simple work" adequately captures the limitations opined by Dr. Marten. (Doc. 15 at 15.) However, in the Tenth Circuit, a restriction limiting a claimant to "simple," "unskilled," or "routine" work is generally insufficient, by itself, to account for a claimant's specific mental limitations because impairment of mental functioning is analytically distinct from the skill level required to perform a job. *Chapo*, 682 F.3d at 1290 n.3 (recognizing that intact mental functions "are not skills but, rather, general prerequisites for most work at any skill level"); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." (citing *Chapo*, 682 F.3d at 1290 n.3)).